HENRY GIBSON, ADMINISTRATOR, APPELLANT, V. MANETTA
HAMMANG ET AL., APPELLEES.

FILED DECEMBER 18, 1901.  No. 10,513.

Commissioner's opinion, Department No. 2.

1. **Finding of Court:** EVIDENCE: DEPOSITIONS. The rule that the
findings of the district court will not be disturbed upon appeal
if there is evidence sufficient to sustain them, does not apply
with the same force to a case heard almost entirely upon
depositions which involve transactions in another state, so that
the trial judge could have had no advantage from general local
knowledge of·the parties, the witnesses and the subjects of con-
troversy.

2. **Fraud:** PRESUMPTION: VOLUNTARY CONVEYANCE: RELATION OF
PARENT AND CHILD. In case of a gift or voluntary conveyance
from parent to child, no presumption of fraud or undue in-
fluence arises as between the parties thereto, from the mere
fact of the relation.

3. ———: ———: ———: ———: AGE AND PHYSICAL CONDI-
TION: UNDUE INFLUENCE: CIRCUMSTANCES. But where a convey-
ance from a parent to one of several children by way of gift,
*prima facie*, is not a just or reasonable disposition of the par-
ent's property, and the age and physical condition of the par-
ent, the proportion of the property conveyed to the whole
estate, and the circumstances surrounding the gift suggest
fraud and undue influence, the transaction should be closely
scrutinized, and the burden is upon the donee to overcome the
presumption of fact arising from such circumstances.

4. **Review:** FACTS. A widow nearly seventy-eight years of age,
much weakened by a recent illness, conveyed properties of the
value of $10,000, out of a total estate of about $18,000, to one of
her eight children. Upon review of the evidence in a suit
brought by her to set aside one of the conveyances, *held*, that
the transfer was procured by undue influence, and should be
canceled.

APPEAL from the district court for Douglas county.
Heard below before SCOTT, J.  *Reversed*.

*C. E. Herring,* for appellant.

*William O. Bartholomew* and *George A. Day, contra*.

Argued·orally by *Herring,* for appellant; by *Bartholomew, contra.*

POUND, C.

Mrs. Sarah Gibson, the original plaintiff in this cause, was a widow, about seventy-eight years of age, residing at Los Gatos, California. She was the owner of the property on which she lived at Los Gatos, a store building there, some stock in a bank and in a water company, and some improved property in Omaha in this state,—in all, if we may judge by the value of her estate when she died, not very long subsequent to the transaction here in question, worth about $18,000. In April, 1896, the defendant, her daughter, who lived in Omaha, came to visit her and remained about six weeks, during which time Mrs. Gibson conveyed to her the home property at Los Gatos and the property in Omaha. This suit was brought by Mrs. Gibson in June following to set aside and cancel the conveyance of the Omaha property on the ground that it had been procured by fraud and undue influence. The plaintiff died soon after, and the cause proceeded in the name of her representative. In the lower court there was a general finding for the defendant, and judgment accordingly, which is now appealed from.

At the outset we are met by the question how far we ought to undertake to review the evidence. As a general proposition, if the evidence is conflicting, or if there is evidence sufficient to sustain the findings of the district court, its determination of questions of fact will not be disturbed, even though we might have reached a different conclusion if called upon to decide such questions in the first instance. If that principle is to be applied to the case at bar, our task is a very simple one; for the testimony of the defendant, of itself, is sufficient to sustain the findings below, within the meaning of the rule. But in *Delorac v. Conna,* 29 Nebr., 791, 811, it is held that the rule does not obtain in its full force where the testimony is not taken orally in

court, and that in such cases this court will examine questions of fact *de novo.* In some cases, it is true, even where all the testimony was taken out of court, and was before the trier of fact only in written form, this court has refused to interfere with findings of fact supported by evidence. *Waldron v. First Nat. Bank,* 60 Nebr., 245. It will be found, however, that there was a peculiar and a sound reason for such course in each of those cases. Thus, in *Waldron v. First Nat. Bank, supra,* the issue was as to the value of certain real property situated in the county where the district court sat, and was to be determined by the affidavits of residents of that county, of whom the trial judge knew more as to their character and credibility than this court could expect to know or to learn from the record. Here we have a case in which a part of the evidence was taken in open court, but by far the greater part was before the district court only in depositions, and in which the transaction in question took place in another state, so that the trial judge could have no advantage over us by reason of general local knowledge of the parties, the witnesses or the subjects of controversy. Under such circumstances, the reason of the general rule fails; and as the rule is of purely judicial origin, intended to promote justice by leaving the determination of questions of fact to those best situated to reach a sound conclusion, we think it should only be applied where its reason operates, and that where the lower court enjoyed no substantial advantage, by reason whereof it was presumably better able to decide rightly than we are, it is the duty of this court to try the facts *de novo* and announce its independent conclusion. We are the more urged to such a holding in this case, because we gather from the record that the lower court misapprehended the rules as to burden of proof which in our opinion should govern.

It seems to be contended by counsel for appellant that the relation of parent and child is so far one of trust and confidence that in any case where one obtains a conveyance from the other the burden is upon the grantee to establish

that the transaction was fair and honest. We are unable to assent to this proposition, nor is it sustained by the authorities cited. While the relation predisposes to trust and confidence, yet some circumstances of reliance or dependence of one upon the other or habitual trust ought to appear in addition. "No presumption of fraud or undue influence arises from the mere existence of the relation.' *Samson v. Samson,* 67 Ia., 253, 25 N. W. Rep., 233; 27 Am. & Eng. Ency. Law, 488. Where the parent is old and feeble and dependent upon the child, or where the child has been given the control and management of the parent's affairs, or has been largely consulted therein, or where they have long lived together, the fiduciary relation may be clear enough. But where, as in this case, parent and child have long lived apart, neither is dependent on the other, neither has habitually consulted or advised with the other, and but a few weeks have elapsed from their reunion to the transaction in question, while we do not deny that a relation of trust and confidence might arise, as Mrs. Gibson testifies there did in this case, such relation is not a necessary presumption from the mere fact that the parties are parent and child, but must be established by the party attacking the transfer, as a part of his case. At least until such trust and confidence are shown, the burden is upon the plaintiff. Granting so much, however, we do not think that the trial court was right in assuming, as he appears to have done, that in case of conflicting testimony as to the immediate details of the transaction, this conveyance must stand. In this case the grantee was one of eight children of the grantor. The conveyance was a mere gift. The grantor was nearly 78 years of age, a widow, much weakened by a recent illness; and the properties conveyed were of the value of $10,000 out of a total estate of about $18,-000. Even if we accept the defendant's statement that she held and intended to hold the Los Gatos property merely in trust and took beneficial title to the Omaha property only, she received one-third, at least, of the entire estate, in which, on the face of things, she should have had but

one-eighth, and that third consisted of the property most likely to rise in value, which has since, as we must know, greatly enhanced. Where a conveyance from a parent to one of several children by way of gift, *prima facie,* is not a just or reasonable disposition of the parent's property, and the age and physical condition of the parent, the proportion of the property conveyed to the whole estate, and the circumstances surrounding the gift suggest fraud and undue influence, the transaction should be closely scrutinized, and the burden is upon the donee to overcome the presumption of fact arising from such circumstances. In other words, though the relation of parent and child may not necessarily and of itself alone cast a burden of proof upon the one receiving a gift or conveyance from the other, so as to bring the rule of law as to burden of proof in cases of relations of trust and confidence into play, it is so far liable to abuse that a strong presumption of fact may arise, from circumstances of a particular transfer, which will require close scrutiny of the transaction, and cast a burden upon the grantee. It is a familiar doctrine that a court of equity scans with great jealousy a transaction where there are any grounds for holding that influence has been acquired and abused, or that confidence has been reposed and betrayed. *Smith v. Kay,* 7 H. L. Cas. [Eng.], 750, 759. In the greater number of cases a long-standing confidential relation existed. But numerous illustrations of the presumption stated may be found in the authorities. Thus, in *Davis v. Dean,* 66 Wis., 100, 110, 26 N. W. Rep., 737, the court reversed a decree sustaining a conveyance by a mother to her adopted son, although it could not be said "that fraud and undue influence were proved affirmatively, but only that the circumstances suggest them." The court said: "Because of the suspicious circumstances under which the conveyances were made, and the injustice which will be inflicted upon the heirs of the grantor if the conveyances are held valid, the law casts upon the grantee the burden of showing that the conveyances are untainted with undue influence or other fraud, but were the intelligent and delib-

erate act of the grantor." In *Worrall's Appeal*, 110 Pa.
St., 349, 1 Atl. Rep., 380, it is said that the burden may
be cast upon the grantee where there is a suspicion of un-
due influence raised by general circumstances. Such sus-
picion of fraud and undue influence is especially strong
where the grantee took an active part in procuring the
conveyance to be made. *Disch v. Timm*, 101 Wis., 179, 77
N. W. Rep., 196, and cases cited.

It would not be possible, in the reasonable limits of an
opinion, to review the evidence in detail. The salient facts
giving rise to a presumption of undue influence have been
noted already. In addition, it appears that the grantee
was an active agent in procuring the conveyance, and in
the immediate details of its execution. There is a sharp
conflict between her and her mother as to who first sug-
gested it and the reason and cause of its execution. Mrs.
Gibson, who impresses us as a fair witness, testifying un-
der no restraint whatever, and, in view of her age and
physical condition, sustaining an adroit and protracted
cross-examination remarkably well, testifies that the de-
fendant procured the deeds by persistent railing against
her brothers, and representations that they, or some of
them, were endeavoring to have a guardian appointed; that
her intention and that of her deceased husband had always
been to divide the property equally among the eight chil-
dren; that she knew she was doing wrong at the time she
made the deed, but was too weak and too much under the
influence of her daughter to resist; that she had no one to
advise with at the time she signed, except defendant, and
"was too much overpowered by her influence and her talk
and promises." Another daughter, who lived near at hand,
was kept in ignorance of the transaction, as well as a
brother living in the same house. The relations of defend-
ant and this brother were not cordial, but no reason ap-
pears for concealment from the sister. Mr. Bowden, an
attorney, in whose office the deed was drawn, testifies that
she appeared perfectly capable, and that the deed was in
every way her free and voluntary act, and, as she then

stated, exactly as she wanted it.   But several considerations operate to diminish the weight of this testimony. He testifies positively that he was not Mrs. Gibson's attorney at the time, so that he evidently represented Mrs. Hammang, with whom he had been in correspondence previously. He represented the latter in this suit.   If such was the case, and Mrs. Gibson was, as she says, completely under her daughter's influence while the two were at his office, he can hardly have had a fair opportunity to judge whether she acted freely or not.   It is true, he testifies that she had previously told him that she intended to give the Omaha property to the defendant; but when, on cross-examination, he enedavored to draw a statement to that effect out of Mrs. Gibson, she repeatedly and emphatically denied it.   The strongest point made by defendant is that she had received less from her parents than the rest of the family, and that the gift was intended to make up the deficiency.   If this were established, it would go far to prove her case.   But the most that can be said is that one of the brothers had received about double what had gone to any of the others.   Although defendant testified that she had received nothing because of hostility of her parents towards her former husband, her mother denies that there ever was such hostility and asserts positively that, with the exception of the one son who had received more than his proportion, and a daughter other than defendant, who had been given nothing, the children had been dealt with substantially alike.   Surely, if the defendant alone of all the children had received nothing, while the others had been well provided for, a fact of such importance was capable of proof by more direct and competent evidence than was adduced.   As the case stands, we feel convinced of the substantial truth of Mrs. Gibson's testimony.   With respect to the claim that this suit was brought by undue influence exerted by the other children, we think Mrs. Gibson's statements in evidence, in a place where all were represented and she was at full liberty to act freely, speak for themselves.   When asked if any one advised her to

bring the suit, she said: "I have the advice this way,—that she had got all my property, and there were seven other children; and I could not feel it was right to let it go.  *  * I always considered it unjust,—the others being left out." In another place, when pressed on the same point, she said to counsel for defendant: "I told you, Mr. Bowden, had it been left to myself, if I had gone to the grave a beggar, I never would have entered suit against my daughter. But I could not let a greedy girl take it all." We are satisfied tha.. these statements, not the deed, represent the real will and intention of the grantor, and that the deed was procured, if not by fraud, through representations that the sons were taking steps to have a guardian appointed, and by a persistent pressure and urgent solicitation, which Mrs. Gibson, in her then weak condition, could not resist, and hence, under repeated adjudications of this court, by undue influence. *Hartnett v. Hartnett,* 42 Nebr., 23; *Munson v. Carter,* 19 Nebr., 293.

We recommend that the decree be reversed and the cause remanded with directions to enter a decree for plaintiff as prayed.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded with directions to enter a judgment for plaintiff as prayed.

REVERSED AND REMANDED.