Spier v. Spier.

FREDERICK SPIER, APPELLEE, V. HENRY SPIER ET AL.,
APPELLANTS.

FILED MAY 13, 1916.  No. 18920.

1. Wills: EXECUTION: COMPETENCY OF WITNESS. It will not be held
that a will was improperly executed simply because one of the wit-
nesses to its execution was less than 14 years of age. If otherwise
competent, such witness may testify concerning the execution of
a will the same as to any other fact.

2. ———: VALIDITY: TESTAMENTARY CAPACITY. Where the testatrix,
although she is aged, knows the amount and character of her prop-
erty and who are naturally the objects of her bounty, and has a
full understanding of the persons and purposes to whom she makes
devises and bequests, she will be regarded as possessing testamen-
tary capacity, and being competent to make a will.

3. ———: ———: UNDUE INFLUENCE: BURDEN OF PROOF. The burden
is upon the contestants to establish undue influence exercised up-
on the testatrix, and in so doing it is not enough to show that the
circumstances attending the execution of the will are consistent
with the hypothesis that it may have been obtained by undue in-
fluence; it must be shown that such circumstances are inconsistent
with a contrary hypothesis.

APPEAL from the district court for Pawnee county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*S. P. Davidson,* for appellants.

*Frank A. Barton* and *J. C. Dort, contra.*

HAMER, J.

Application was made to the county court of Pawnee
county for the probate of the will of Sophie Spier. The
proponent, Frederick Spier, represented to the court that
Sophie Spier died in Pawnee county on the 25th day of
July, 1913, leaving a last will and testament in which
Charles A. Schappel was named as the executor thereof.
This will was filed on the 9th day of August, 1913, in the
county court of said county, and relates to both real and

personal estate. Sophie Spier, immediately prior to her death, was a resident and inhabitant of Pawnee county, and was possessed of real estate and personal property therein; the real estate being of the estimated value of $9,000, and the personal property of the value of $275. The decedent left surviving her Carl Spier, her son, residing in Nebraska City, Henry Spier, William Spier, August Spier, Frederick Spier, and Louis Spier, all residing in Pawnee county, Nebraska, and Fredericka Frey of Mount Clare, Nebraska, her only daughter. It is alleged that the will was executed on the 19th day of July, 1910, and that at the time of its execution the said Sophie Spier was of lawful age, of sound mind and memory and not under any restraint, and was competent to devise and bequeath said real estate and personal property; that a decree was duly made in the said county court which admitted the said will to probate, and appointed Charles A. Schappel executor of the said will and fixed the executor's bond in the sum of $1,000; that on the same day said Schappel presented his bond as executor in the sum of $1,000, with Frederick Spier and Louis Spier as sureties, and said bond was approved by the county judge of said county, and letters testamentary were thereupon immediately issued to the said Schappel as executor of said last will and testament; that on the 30th of September, 1913, the said Henry Spier, August Spier and William Spier filed their appeal bond in said county court in the sum of $300 appealing from the aforesaid decree probating said will, and on the 9th day of October, 1913, there was filed in the district court for said Pawnee county a transcript of the proceedings in said estate in the county court thereof; that an appeal was prosecuted from the decree of the said county court probating the said will.

Henry Spier, August Spier and William Spier, contestants, filed an answer to the petition on appeal in said case in the district court. They admitted that the said Sophie Spier died at the time and place alleged in the petition, and that at the time of her death she was a resident and

inhabitant of the county of Pawnee, in the state of Nebraska, and admitted that the names and addresses of the heirs at law are properly given in the petition. Each and every other allegation in said petition contained was denied. Said case was heard on appeal in the district court for Pawnee county on the 15th day of April, 1914. There was a jury, which rendered a verdict for the proponent, Frederick Spier. An appeal was taken from the judgment of the district court for Pawnee county to this court.

It is contended: (1) That said alleged will was not executed and witnessed as the law requires. (2) That the deceased was not mentally competent to make a will at the time the alleged will was executed. (3) That the deceased was unduly controlled and influenced by the proponent, Frederick Spier, and his brother, Louis Spier.

The testatrix seems to have been something more than 80 years old when she made the will. It is claimed that she was feeble, and that the will was not executed as the law requires. It is true that Fredericka Spier was only 14 years old at the time she witnessed the will. It is contended that she was incompetent to act as an attesting witness. She was asked and expressed the opinion that she thought her grandmother was competent to do business. It may be considered that she was not very competent to testify about that fact, being of the age of only 14 years, but she had a right to testify to that fact as she could testify to any other fact within her knowledge; and, if she may not have known much about it, it would be for the jury to consider that fact. It is claimed by the contestants that she did not know the meaning of the words "mental capacity" or "capacity to do business." It is probable that not very much knowledge can be gained from reading her evidence. At the same time she was competent to testify. *Evers v. State*, 84 Neb. 708; *Davis v. State*, 31 Neb. 247. We do not care to say that Fredericka Spier was not able to testify. She was not required to have any other

qualifications than those of an ordinary witness. *Carlton v. Carlton,* 40 N. H. 14.

It appears that the testatrix, in the presence of R. R. Mahan and Mike Weber, on the 8th day of February, 1913, declared to Mr. Schappel in the German language that the instrument prepared was her last will and testament, and that it was signed by her, and she desired these gentlemen to sign the attestation clause. Mr. Schappel interpreted her words into English to Mr. Mahan, and Mr. Mahan and Weber signed the instrument in the presence of the testatrix. It appears that Weber could speak German, although he did not remember the conversation.

In *Holyoke v. Sipp,* 77 Neb. 394, it is held, as stated in the syllabus: "A presumption of the due execution of a will arises from the presence of an attestation clause which recites the facts necessary to the validity of the will, and, in the absence of evidence discrediting the statements, the will should be admitted to probate." It is said in the body of the opinion: "When the subscribing witnesses are present at the probate and admit the genuineness of their signatures, but deny or are unable to recollect some or all of the facts which were attendant upon the execution, so that one or both of them are unable or unwilling to testify with positiveness and of their own knowledge that all the requirements of the statute were complied with, a presumption of due and proper execution will arise from the recitals of a perfect attestation clause."

There was a second attestation clause. It recited: "We, the undersigned, have this 8th day of February, A. D. 1913, subscribed our names in the presence and by the request of the testatrix, Sophie Spier. R. R. Mahan, Pawnee City, Nebraska. Mike Weber, Steinauer, Nebraska." It is not necessary that the witnesses see the testator sign, if he acknowledges to them that he has signed the will and shows them his signature thereto. Dame, Probate and Administration (2d ed.) sec. 43.

Publication, as the term is used in the law of wills, is the act or acts of the party by which he manifests that it is his

intention to give effect to the paper as his last will and testament; and any communication, indicating to the witness that the testator intends to give effect to a paper as his will, by word, sign, or motion, or conduct, is sufficient in law to constitute a publication. *In re Estate of Ayers,* 84 Neb. 16. In the case last-above cited this court held: "Where the evidence shows that the witnesses to a will signed the same at the request of the testator, who thereupon directed the draftsman thereof to place the same in an envelope addressed to the county judge, in whose office it was afterwards found, such acts constitute a sufficient publication of the will."

Concerning the competency of the testatrix, Charles A. Schappel testified that he had been acquainted with the testatrix 20 years or more; that he had had business dealings with her; she being the administratrix of the estate of her deceased son, Herman Spier, who died in the year 1907, and from whom she inherited the 120 acres of land involved in this case. He testified that she frequently came to his office in Pawnee City and talked her business affairs over with him. He went to her house on the 19th of July, 1910, taking with him his partner, Frank Barton, and she directed the making of the will. She gave instructions in the German language, and Mr. Schappell interpreted the instructions to Mr. Barton.

Frank Barton testified that he had been acquainted with her about three years before the making of the will; that she frequently came to the office of Schappel & Barton and talked over her business matters; that he drew the proposed will under her direction and as dictated by her and interpreted to him by Mr. Schappel. He thought she was competent to transact ordinary business affairs on the 19th of July, 1910.

Herman Kruger, the preacher, testified that he had known her 24 years; that he was her pastor, and frequently visited at the house and talked with her about religious and other subjects. In his opinion she was

capable of transacting ordinary business on the 19th of
July, 1910.

Dr. Prendergast testified to having had considerable
experience with persons mentally deranged. He was called
to visit the testatrix and to treat her for acute bronchitis.
He had made four calls upon her in March, 1910, and had
observed her mental condition. He also treated her in
April, 1911, and he finally treated her at the time of her
last illness in July, 1913. It was his opinion that her men-
tal condition was normal.

Steinauer, the banker, testified that he had lived within
two miles of the testatrix for 40 years. He was well ac-
quainted with her. He had had business transactions with
her in loaning and borrowing money. He had often visited
her at her house. In his opinion she was competent to
transact ordinary business on the 19th of July, 1910.

Numerous other witnesses testified along the same line.

There is no evidence that shows that she was mentally
incapable of doing business. Apparently there was
nothing to cast serious doubt upon her testamentary capac-
ity.

The third contention is that she was subject to undue in-
fluence. It is testified to by John Spier, the old lady's
grandson, that she had said that she would like to sell the
place and divide it up equally among the boys and her
daughter, but she said that Fred had said "no," and not
until his boys were big enough. This testimony does not
show that Fred had refused his permission. It fails to
show that he attempted to control her. It is simply her
statement that he had said no, and it is not corroborated
by anything that he said in the presence of anybody.

Gottlieb Spier testified that he had heard her say that
she would like to have it divided up equally, and each one
have so much, but she said she didn't know if she could or
not; she said the rest of the boys would all be against it.
She did not know that she could do it or not. She would
like to divide it up equal. But here again is the same
thing; it is only her statement as to what the will of Fred

Spier v. Spier.

and Louis may have been. On that question she may have been timid, or she may have imagined that they entertained this view or that view. If there was evidence that they had directly spoken to her, there would then be something before the court; but there is a total failure of evidence of this kind.

We do not feel we are justified in reaching a conclusion different from that reached in the district court. The judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.