NANCY J. MOORE, APPELLANT, v. GRANT W. WILLIAMS,
APPELLEE.

FILED DECEMBER 31, 1923.    No. 22608.

1.  Judgment: RECITAL OF SERVICE. When, in a suit upon a foreign
    judgment, the question at issue is whether service of summons
    was made upon defendant in the suit where the foreign judgment
    was secured, the recital in the transcript of the foreign judgment
    that personal summons was made is only *prima facie* evidence
    of the fact and is subject to contradiction by evidence *aliunde*.

2.  Evidence: WEIGHT OF EVIDENCE. The weight to be given to
    evidence cannot be determined alone by the number of witnesses
    who testify to a given state of facts, but rather by the character
    of each witness, his appearance and demeanor upon the witness-
    stand, his bias or prejudice, his relationship, if any, to the
    parties, the reasonableness or unreasonableness of the story told,
    and by those intricate tests that are either consciously or un-
    consciously applied by triers of fact as they observe the witness
    upon the stand and hear his testimony as it is uttered from his
    own lips.

3.  Judgment: PROOF OF SERVICE: QUESTION FOR JURY. Whether
    the uncorroborated testimony of a defendant in a suit based upon
    a foreign judgment, denying the officer's return of service upon
    him in the foreign jurisdiction, is sufficient to overcome such re-
    turn and the evidence given in support thereof or not is a ques-
    tion for the jury.

4.  ———: ———: INSTRUCTION. _n a suit upon a foreign judg-
    ment, where the question in issue is whether or not service of
    summons was had upon defendant in the court of the sister
    state, it is proper for the trial court to give the following in-
    structi_n to the jury, viz.:
        "With respect to the judgment sued upon in this case, the

jury are instructed that it is a valid judgment on it's face and binding upon this court unless you find from the evidence that the summons in that case was not served upon the defendant. Upon this question the burden of proof is upon the plaintiff to satisfy you by a preponderance of the evidence that the summons was served as stated in the return, that is, by reading to and delivering a copy to the defendant personally in Cook county, Illinois; the presumption is in favor of the truth of the return, as the law presumes that all officers perform their duties faithfully, but this presumption is rebuttable, that is, the defendant may show, if he can, that the return is false; the evidence, however, contradicting the return should be clear and satisfactory; but if upon a full and fair consideration of all the evidence in the case you are not satisfied by a preponderance of the evidence that the return is true. the judgment falls and you should find for defendant on that cause of action."

APPEAL from the district court for Douglas county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*W. J. Connell,* for appellant.

*Lambert, Shotwell & Shotwell, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and GOOD, JJ.

MORRISSEY, C. J.

This action was brought in the district court for Douglas county upon a judgment for $1,000 entered in the circuit court of Cook county, Illinois, in favor of plaintiff and against defendant. The petition contains all the necessary allegations to state a cause of action on a foreign judgment. The answer is a general denial, coupled with a claim by way of set-off for $113.50. Defendant's real defense to plaintiff's cause of action was that he had never been served with summons in Cook county, Illinois, and that the circuit court of that county was wholly without jurisdiction to render the judgment sued on here. There was a verdict in favor of defendant, and plaintiff prosecutes this appeal. Two main assignments are made, namely, that the verdict is not sustained by sufficient evidence, and that the court erred in giving instruction No. 2, which will later be set out.

Formerly plaintiff was a citizen of Omaha, and while she

resided there defendant, who was, and is, a practicing dentist, did some dental work for her. After this work was done plaintiff removed to Chicago, where in June, 1919, she was residing with her two unmarried sons. Defendant claimed that she owed him a balance of about $150 for his professional services, and on Saturday, June 21, 1919, he called at her home in Chicago with a view of collecting this bill. Plaintiff paid defendant $13, and it was agreed that he should call again at her home the following Monday, when, according to defendant's testimony, she was to pay an additional $12, and execute a note, payable to him, for the balance due. As to the matters just related there is little, if any, dispute in the evidence of plaintiff and defendant, but as to other occurrences there is flat contradiction. Plaintiff testified that upon this occasion defendant showed signs of drunkeness, and that he was very abusive to her and made remarks reflecting upon her character. Plaintiff testified that after Dr. Williams left her home she, on the advice of her son, visited an attorney and made arrangements with him to bring a suit against Dr. Williams based upon the language which he had used toward her on the occasion of his visit; that she informed her attorney that Dr. Williams' would call at her home on the following Monday, and an understanding was reached between her and her attorney that the suit would be instituted and a deputy sheriff would be sent to her home to await the coming of Dr. Williams in order that service of summons might be made upon him; that, on the evening of the Monday following, a deputy sheriff called at her home and awaited the coming of defendant; that defendant called and had with him a friend, who was a stranger to plaintiff. In testifying as to what then occurred, plaintiff states that defendant introduced his friend to plaintiff as an attorney, but that she subsequently learned that he was a dentist; that defendant asked plaintiff if she had any money for him, to which she replied that she had not; that defendant then asked her to sign a note, which she declined to do, stating, among other things, that his services had not been satisfactory, and con-

cluded by telling him that he had insulted her upon the previous visit. In considerable detail she recites the alleged conversation, and states that defendant finally threatened that, if she did not sign the note or pay him the money, he would "strip her clothes off her back," and grabbed her by the waist. At this point, she claims, the deputy sheriff, who was secreted in another room, stepped out and said to defendant: "Take your hands off that woman. * * * I am a deputy sheriff. I guess you are Dr. Grant W. Williams of Omaha. * * * I am here to serve summons on you in a lawsuit of Mrs. Moore's." The witness then testifies at some length as to the conversation between the deputy sheriff and defendant. The purport of this testimony is to the effect that the deputy sheriff read a summons to defendant and delivered him a copy, and that defendant threw the copy on the floor; that defendant again made accusations against her character, and the deputy sheriff first advised plaintiff to order defendant out of her house, but upon defendant's failure to go immediately, the deputy sheriff advised her to call the police. The witness also described a scuffle between the parties present followed by the flight of defendant and his friend. This testimony is corroborated by the testimony of plaintiff's son and by the testimony, in the form of a deposition, given by the deputy sheriff. In addition to this, there is a duly authenticated transcript, including the return of the deputy sheriff showing service upon defendant, from the circuit court of Cook county, Illinois.

To meet this proof defendant testified in his own behalf. He told of his call at the home of plaintiff on the afternoon of June 19, but explicitly denied the charges made against his conduct of that day. He said that plaintiff paid him $13 in cash, and that her son, a young man 22 or 23 years of age, drew up a contract reciting that, if defendant would call at the house the following Monday, they would pay him $12 in cash and give him a note for the balance due; that, in pursuance of this agreement, he called at plaintiff's house on Monday, June 21, accompanied by a friend. He explicit-

ly denies that the man representing himself to be a deputy sheriff either read a summons to him or gave him a paper of any kind, or that any attempt to serve a summons on him was made; and as explicitly denies that he threatened plaintiff with personal violence or made any movement indicating his intention to inflict punishment upon her. According to defendant's version of what occurred, he apologized for being a few moments late, and stated to plaintiff that he had a note prepared for her to sign; that she refused to sign the note, assigning as her reason therefor that defendant "tried to blacken my character," that, while, plaintiff and defendant were debating this question, a man stepped in from another room, and throwing open his coat exhibited a badge and said to defendant, "You are under arrest." Then, further detailing the occurrences, defendant states that he protested that he had done nothing for which he should be arrested; that plaintiff immediately announced that she was going to call the police, and defendant and his friend, suspecting that they were to be made the victims of a conspiracy, forthwith departed from the house; that as defendant left the premises he was followed to his taxicab, which he had left in the street, by the deputy sheriff, if such he was, who, from time to time gave directions to plaintiff, "Get the police and have him arrested."

Defendant made no appearance in court, and, according to his story, had no notice or knowledge that he had been sued. The judgment which forms the basis for this action was entered against defendant by default.

We are seriously urged to hold that it was error for the trial court, in view of the duly authenticated transcript of the judgment, including the officer's return showing personal service to have been made, supported by the oral testimony offered in behalf of plaintiff and contradicted only by the testimony of defendant, to submit to the jury the question as to whether service had in fact been made upon defendant. The recital in the record of the foreign judgment that personal service of summons was made is only *prima facie* evidence of that fact and is subject to contra-

diction by evidence *aliunde*.   7 Ency. of Evi. p. 844.   Defendant was therefore at liberty to offer oral testimony to contradict it.   To be sure, the officer's return is supported by the oral testimony of plaintiff and her witnesses.   Against the record as it was made up by plaintiff, ,defendant interposed only his own testimony, but defendant's testimony could not be disregarded merely because it stood alone.   Often there does arise the situation where the only testimony that the party to the litigation has is his own uncorroborated statement, and to deny him the right to have that statement submitted to the jury or considered by the court would, in fact, result in a refusal to accord him a hearing in a court of justice.   This has never been held to be the rule.   The settled rule is that the weight to be given to evidence is not to be determined alone by the number of witnesses who testify to a given state of facts, but rather by the character of the witness, his appearance and demeanor upon the witness-stand, his bias or prejudice, his relationship, if any, to the parties, the reasonableness or unreasonableness of the story told, and by those intricate tests that are either consciously or unconsciously applied by the triers of fact as they observe the witness upon the stand and hear his testimony as it is uttered from his own lips.

"Whether the uncorroborated testimony of the defendant in a case, denying the officer's return of service upon him, is sufficient to overcome such return or not is a question for the tribunal which tries the facts."   *Trager v. Webster*, 174 Mass. 580.   The court did not err in submitting the controverted question of service of summons to the jury for its determination.

Having found that it was proper for the court to submit to the jury the question as to whether or not service of summons was had upon defendant in Cook county, Illinois, we are left to consider the correctness of the court's instruction to the jury, which instruction reads as follows:

"With respect to the judgment sued upon in this case, the jury are instructed that it is a valid judgment on its face and binding upon this court unless you find from the

evidence that the summons in that case was not served up-
on the defendant. Upon this question the burden of proof
is upon the plaintiff to satisfy you by a preponderance of
the evidence that the summons was served as stated in the
return, that is, by reading to and delivering a copy to the
defendant personally in Cook county, Illinois; the presump-
tion is in favor of the truth of the return, as the law, pre-
sumes that all officers perform their duties faithfully, but
this presumption is rebuttable, that is, the defendant may
show, if he can, that the return is false; the evidence, how-
ever, contradicting the return should be clear and satis-
factory; but if upon a full and fair consideration of all
the evidence in the case you are not satisfied by a preponder-
ance of the evidence that the return is true, the judgment
falls and you should find for defendant on that cause of
action." This instruction is criticised because, as said in
appellant's brief: "The court below took the view that the
burden of proof was on the plaintiff to establish by a pre-
ponderance of testimony that the summons was served as
set forth in the return of the deputy sheriff." With respect
to this assignment, then, we are called upon to determine
upon which of the parties rested the burden of proof, or
the burden of evidence, to show that the service was in fact
made.

"Although the phrase 'burden of proof' is one of double
meaning, which circumstance has been the cause of con-
fusion so great as to suggest the propriety of adopting a
less objectionable term, it has a firmly established place in
legal phraseology and cannot well be superseded. The am-
biguity lies in the indiscriminate use of the phrase 'burden
of proof,' as meaning either, first, the necessity of estab-
lishing the existence of a certain fact or set of facts by evi-
dence which preponderates to a legally required extent; or,
second, the necessity which rests on a party at any particu-
lar time during the trial to create a *prima facie* case in his
own favor or to overthrow one when created against him.
In this article the phrase 'burden of evidence' will be ap-
plied to this second meaning, and the phrase 'burden of

Moore v. Williams.

proof' to the necessity of finally establishing a fact or set of facts in issue. 'Burden of evidence' represents a very ordinary and, indeed, inevitable incident of any contest which is to be decided by the use of reason as influenced by facts and argument. Confusion can, to a certain extent, be avoided, and apparent contradictions reconciled, by bearing in mind the distinction between 'burden of proof' and 'burden of evidence' to be hereinafter stated, and also the fact that in the vast majority of cases any such distinction is entirely ignored by the courts. The general rule is that the burden of proof rests upon the party who has the affirmative of the issue, as determined by the pleadings, or, where there are no pleadings, by the nature of the investigation. This rule is founded upon the obvious purpose of facilitating justice by serving the convenience of the court; and as the rule as to burden of proof is a fixed rule of law, the burden never shifts from the party having the affirmative of the issue. The rule as to the burden of proof is important and indispensable in the administration of justice, and constitutes a substantial right of the party upon whose adversary the burden rests. It should therefore be jealously guarded and rigidly enforced by the courts. The test for determining which party has the affirmative, and therefore the burden of establishing a case, is found in the result of an inquiry as to which party would be successful if no evidence at all were given, the burden being of course on the adverse party." 22 C. J. 67 *et seq.*

And this court has held: "The burden of sustaining the affirmative of an issue involved in an action does not shift during the progress of the trial, but is upon the party alleging the facts constituting the issue, and remains there until the end." *Rapp v. Sarpy County*, 71 Neb. 382.

This rule is elucidated in the body of the opinion in *Beckman v. Lincoln & N. W. R. Co.*, 79 Neb. 89.

The instruction correctly applies the rule. We find no error in the charge, nor in the record as a whole, and the judgment of the district court is

AFFIRMED.