IN RE ESTATE OF CLARA E. HAGAN.
GLENN H. FRITZLER ET AL., APPELLEES, V. OSCAR A. KEITH-
LEY ET AL., APPELLEES: SAMUEL L. WINTERS, EXECUTOR,
APPELLANT.
9 N. W. (2d) 794

FILED JUNE 4, 1943. No. 31533.

 

*Samuel L. Winters,* for appellant.

*Reed, Ramacciotti & Hruska, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an appeal by Samuel L. Winters, executor of the estate of Clara E. Hagan, deceased, from an order and judgment of the district court for Douglas county, Nebraska, admitting to probate a will of the said Clara E. Hagan, and the refusal to admit to probate an earlier one. The named beneficiaries of the earlier will, who are nephews and a niece of the testatrix, have not participated as appellants herein, hence they have been named as appellees. Oscar A. Keithley and Maud E. Keithley, husband and wife, are beneficiaries under the will in question here and are the only parties against whom the appeal is directed, therefore in this opinion they alone will be referred to as appellees.

On August 1, 1940, Clara E. Hagan made and executed a will by the terms of which, after payment of debts, funeral expenses and costs of administration, she left her entire estate in proportions not necessary to be set forth here to a niece and three nephews. In this will Samuel L. Winters was designated executor. Her mental capacity and the propriety of this will have not been brought into question.

On February 18, 1941, she made and executed another will. In this will Oscar A. Keithley and Maud E. Keithley, or the survivor of them, were left two lots and four houses, the furniture, furnishings, equipment and personal effects

of Mrs. Hagan, and also a real estate mortgage of the value of about $600. Substantial portions of the balance of the estate were left to two of the nephews and the niece. The other nephew was given $1. These nephews and this niece appear to be the only closely related persons. The Keithleys were not related to Mrs. Hagan.

Clara E. Hagan died June 28, 1941. Petitions for probate of the two wills were filed in the county court. The former was admitted to probate by the county court and Samuel L. Winters duly qualified as executor. From the order admitting this will and the denial of the later will to probate the Keithleys appealed to the district court. In the district court a jury was waived and trial was had to the court. In the district court the judgment of the county court was reversed, the earlier will was denied and the later one admitted to probate. From this judgment of the district court Samuel L. Winters, executor, perfected an appeal to this court.

As has been pointed out no attack is made upon the earlier will as a will. The contention of the appellees is only that it was superseded and rendered of no effect by the later will. The later will is attacked on the ground that Mrs. Hagan lacked sufficient mental capacity to make a will and on the further ground that it was made and executed under undue influence.

Before entering upon a discussion of the merits of the controversy it will be necessary to determine the approach thereto.

Appellant contends that the case having come to the district court on appeal from the county court in a probate matter, it was triable to the court without a jury, as in equity, and that here it shall be considered *de novo* on the record, and agreeable to the statutory rule that in equity cases this court shall reach an independent conclusion without reference to the conclusion reached in the district court. Comp. St. 1929, sec. 20-1925.

On the other hand the appellees contend that it shall be approached as in law actions where a jury is waived, and

that the findings of fact of the trial judge shall have the same force and effect as the verdict of a jury and will not be set aside unless clearly wrong. *Linch v. Berggren,* 135 Neb. 530, 282 N. W. 528; *Batth v. Metropolitan Life Ins. Co.,* 137 Neb. 676, 290 N. W. 902.

As authority for his position the appellant cites the case of *In re Guardianship of Warner,* 137 Neb. 25, 288 N. W. 39, and numerous cases from other jurisdictions. The matter presented there was the effect of a verdict in an appeal to the district court from the appointment of a guardian. It was held that trial by jury as a matter of right did not exist hence the verdict of the jury was advisory only, and in consequence error could not be predicated on instructions given.

In legal principle we perceive no difference in that case and the one at bar on the matter of the right to trial by jury in the district court.

As pointed out in that case, with which conclusion we agree, the right to a trial by jury in the county court in probate matters does not exist. See 35 C. J. 151. This rule extends to proceedings for probate and revocation of wills. See 35 C. J. 181. We are also in accord with the proposition, as it is set forth in *In re Guardianship of Warner, supra,* that there is no constitutional right to trial by jury in appeals to the district court from the county court in probate matters. See 35 C. J. 195.

We think however that in *In re Guardianship of Warner, supra,* due consideration was not given to the rule that there is no absolute right to a jury trial on appeals in probate except in jurisdictions where the right to demand a jury on the trial of the appeal is expressly conferred by statute. See 35 C. J. 196. From an analysis of our statutes it appears that the right to trial by jury on appeal in probate matters has been expressly conferred.

Section 30-1606, Comp. St. 1929, which deals with conduct of proceedings on appeal to the district court in probate proceedings is as follows: "Upon the filing of such transcript in the district court, that court shall be possessed

of the action, and shall proceed to hear, try and determine the same, in like manner as upon appeals brought upon the judgment of the same court in civil actions."

Section 27-540, Comp. St. 1929, which deals with appeals from the county court in civil actions is, in part, as follows: "In civil actions brought under the provisions of this chapter either party may appeal from the judgment of the county court, in the same manner as provided by law in cases tried and determined by justices of the peace."

Section 21-1305, Comp. St. 1929, which deals with appeals from justices of the peace is as follows: "The plaintiff in the court below shall be the plaintiff in the district court; and the parties shall proceed, in all respects, in the same manner as though the action had been originally instituted in such court."

It logically and necessarily follows that, since the right of trial by jury shall remain inviolate (Const. art I, sec. 6), and since by statute on appeal from a justice of the peace the same rights shall attach as if the action had been originally instituted in the district court, and since in appeals in civil actions from the county court the same rights are granted as in appeals from justices of the peace, and since the same rights are granted in appeals in probate matters as are granted in appeals in civil actions from the county court, it must be said that by statute the right to jury trial on appeal in probate matters is expressly conferred.

In *Sheedy v. Sheedy,* 36 Neb. 373, 54 N. W. 560, which was an appeal on an order of the county court granting a widow's allowance, this court said with regard to the right to trial by jury in the district court, after quoting what is now section 30-1606, Comp. St. 1929: "Civil actions which come into the district court by appeal from the county court, or from justices of the peace, are triable by jury in the absence of a special provision upon the subject."

In the case of *In re Estate of Maag,* 119 Neb. 237, 228 N. W. 537, which was an appeal from the county court in probate for refusal to make a widow's allowance, it was held that the action was at law and triable to a jury unless

there was a waiver. The decision and holding in *In re Guardianship of Warner, supra,* is overruled.

It follows then that we are called upon here to ascertain whether or not the findings of fact by the district court on the questions of mental capacity and undue influence are clearly wrong, agreeable to the rule applicable in actions triable to a jury but where a jury has been waived.

Considering first the issue of undue influence it may be stated here that the general rule is that the burden is upon the party alleging that a will was procured by undue influence to establish that the testator was induced by improper means so to make it. *Seebrock v. Fedawa,* 30 Neb. 424, 46 N. W. 650; *Boggs v. Boggs,* 62 Neb. 274, 87 N. W. 39; *In re Estate of Dovey,* 101 Neb. 11, 162 N. W. 134; *In re Estate of Fenstermacher,* 102 Neb. 560, 168 N. W. 101; *In re Estate of Wilson,* 114 Neb. 593, 208 N. W. 961; *In re Estate of Bayer,* 119 Neb. 191, 227 N. W. 928.

The appellant contends that the rule has its exceptions and that this case falls within the exceptions. He contends that because of the peculiar facts of this case it should be controlled by the rule announced in *Gibson v. Hammang,* 63 Neb. 349, 88 N. W. 500, and followed in *Wixson v. Nebraska Conference Ass'n,* 122 Neb. 771, 241 N. W. 532, as follows: "Where a conveyance from a parent to one of several children * * * is not a just or reasonable disposition of the parent's property, and the age and physical condition of the parent, the proportion of the property conveyed to the whole estate, and the circumstances surrounding the gift suggest * * * undue influence, * * * the burden is upon the donee to overcome the presumption of fact arising from such circumstances." The former of these two cases was an action in equity to set aside a deed on the ground of undue influence. The latter was a will contest. The cases of *Bennett v. Bennett,* 65 Neb. 432, 91 N. W. 409, and *Scott v. Swank,* 132 Neb. 720, 273 N. W. 25, are two actions in equity to set aside conveyances of real estate. They announce the rule with regard to proof of undue influence in similar language. In them it is said: "The circumstances under

which a conveyance was made, the condition of the grantor at the time, and the injustice to him and his heirs if it is upheld, may be such as to cast upon the grantee the burden of showing that it is untainted with undue influence, imposition, or fraud, but is the intelligent and deliberate act of the grantor." It will be observed that the only substantial difference between the two statements is that in the former it is stated that the character of evidence may create a presumption of undue influence whereas the latter states only that such evidence may cause the burden of proof to be shifted.

It is obvious from these decisions that upon the development of evidence along the lines suggested in these decisions the exception to the general rule that he who charges undue influence must sustain the burden of proving it applies alike to actions in equity to set aside conveyances of real estate and will contests.

The soundness of these exceptions to the general rule is brought into question by the briefs of the appellees in this case. We are inclined to agree with the contention.

In coming to this conclusion we have examined the criteria for the rule as the same are contained first in *Gibson v. Hammang, supra.* As will be observed they are: Is the disposition just? Is it reasonable? Does the conveyance bear a fair proportion to the whole estate? What do the circumstances surrounding the gift suggest? What was the age and physical condition of the person making the conveyance? The other cases add other criteria of the same general character, and like those enumerated here they are facts determinable on the trial of the case.

It requires no citation to say that if the burden of proof shifts it must shift at the conclusion of objector's or plaintiff's *prima facie* case. That being true then the shift of burden cannot depend upon the criteria enumerated in the exception, because each and every one of the criteria except possibly age is an ultimate fact which is not possible of determination except at the conclusion of all of the evidence. If these exceptions are to remain as a rule of law they can

only so remain by, in effect, holding that the burden of proof shall be ascertained at the conclusion of all of the evidence, rather than at the beginning or at the conclusion of the plaintiff's or objector's evidence.

In fact this is the holding in *Wixson v. Nebraska Conference Ass'n, supra.* In that case the court approved an instruction which placed the burden of determining where the burden of proof rested on the jury.

This is clearly violative of the rules with regard to the burden of proof. The burden of proof in its proper sense rests, throughout the case, as to each issue, on the party originally having the burden as to such issue. *Pierce v. Miller,* 107 Neb. 851, 187 N. W. 105; *Moore v. Williams,* 111 Neb. 342, 196 N. W. 695; 31 C. J. S. 709, sec. 104. It is also the rule that the question of where the burden of proof shall rest shall be determined from the pleadings. In *Gutzmer v. Nelsen,* 121 Neb. 214, 236 N. W. 614, which was an action in equity to set aside a deed on the grounds of lack of mental capacity and undue influence it was stated: "If plaintiffs relied upon either or both of these elements so pleaded, it was their duty to furnish the proof. It is a fundamental rule of pleading and evidence that a party pleading a material fact assumes the burden of proving it."

As stated in 31 C. J. S. 709, sec. 104: "The test for determining which party has the affirmative, and therefore the burden of establishing a case, is found in the result of an inquiry as to which party would be successful if no evidence at all were given, the burden being, of course, on the adverse party."

The propriety of a rule which says that when the evidence of the party having the burden of proof is sufficient to make a *prima facie* case gives rise at that point to a presumption of the existence of a fact, we do not question. Moreover we do not question the propriety of a rule which states that from proof of the existence of certain factual elements the existence of an ultimate or issuable fact may be inferred or presumed. Likewise we do not question the propriety of a rule which, in a proper case, when a *prima facie* case is

made, placed the burden on the adversary of overcoming the *prima facie* case by a preponderance of the evidence. But a rule or an exception thereto cannot be sustained which leaves in doubt and for determination the burden of proof or burden of evidence until all of the evidence has been adduced.

As has already been pointed out the burden of proof is determinable from the pleadings and the burden of evidence is determinable by the court from time to time throughout the trial.

"The burden of evidence, defined in section 103 *supra*, sometimes termed the burden of producing, or going forward with, the evidence, or the burden of procedure, shifts, or may shift, from side to side during the progress of the trial. Its position at any particular time is controlled by the logical necessities of making proof which a party is under at the time, the burden being always on that party against whom the decision of the tribunal would be given if no further evidence were introduced." 31 C. J. S. 718, sec. 110.

In so far as will contests are concerned where the ground of the contest is undue influence, the exception to the general rule that the party charging undue influence assumes the burden of proving it, as contained in *Wixson v. Nebraska Conference Ass'n, supra,* is rejected and overruled and the general rule as set forth in *In re Estate of Wilson, supra,* is reannounced without exception as follows: "Where it is alleged that the execution of a will was procured by undue influence, the burden is upon the party alleging it to establish that the testator was induced by improper means to dispose of his property differently from what he intended." This pronouncement was originally made in the third point of the syllabus in *Seebrock v. Fedawa, supra.*

As has been previously indicated the will is attacked on the ground of lack of mental capacity on the part of the testator. As to this, the burden is upon the proponents to show mental capacity. The rule was stated in *Seebrock v. Fedawa, supra,* as follows: "The burden is upon the pro-

ponent of a will, both in the county court and in the district court on appeal, to prove, not only the execution of the will, but the capacity of the testator." The rule has been followed in a long line of cases down to and including *In re Estate of Bose,* 136 Neb. 156, 285 N. W. 319.

Having determined the burdens of the respective parties with respect to the issues presented we turn to the evidence to ascertain whether or not the findings of the trial court are sufficiently supported by the evidence. In other words is it possible to say that the findings are clearly wrong?

The elements necessary to be established to warrant the rejection of a will on the ground of undue influence are (1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; (4) that the result appears to be the effect of such influence. *Gidley v. Gidley,* 130 Neb. 419, 265 N. W. 245; *Smith v. Black, ante,* p. 244, 9 N. W. (2d) 193. But one of these elements, the second, was indisputably established. The evidence as to the other three was quite voluminous on both sides and in sharp conflict. The evidence of appellant was largely circumstantial and in considerable measure hearsay. Much of the testimony of appellees was circumstantial and also in some degree hearsay. There was, however, a full and complete denial of undue influence by appellees and a full disclosure of the details leading up to the making of the will. Also before the death of the testatrix appellees fully informed the niece and nephews and the appellant of the transaction, which gave them opportunity to investigate the matter before her death, which was done at least on one occasion in the office of appellant.

In the light of this evidence and the rule that where a jury has been waived the findings of fact of the trial judge shall have the same force and effect as the verdict of a jury and will not be set aside unless clearly wrong, we cannot sustain the contention of appellant on the issue of undue influence.

The remaining issue is that of the mental capacity of the

testatrix to make a will. The will having been attacked on the ground of lack of such capacity, before it may be upheld, it must be shown that (1) she understood the nature of her act; (2) that she knew the extent of her property; (3) that she understood the proposed testamentary disposition; (4) that she knew the natural objects of her bounty; and (5) that the will represented her wishes. *Spier v. Spier*, 99 Neb. 853, 157 N. W. 1014; *In re Estate of Kajewski*, 134 Neb. 485, 279 N. W. 185.

That the testatrix knew the extent of her property and the natural objects of her bounty there can be no question. The entire evidence as well as the recitals in the will itself support this view.

As to the other three elements the evidence is conflicting. The entire evidence shows that at the time of the making of the will Mrs. Hagan was past 80 years of age but that she was active for her years and was able to converse freely with other people. Some of the evidence of appellant indicates that she was to a degree forgetful and that she lived in the past, and that on one occasion in March after the will was executed she appeared to become mentally confused; also that she did not understand the nature of her act in the making of the will, or her testamentary disposition. In this connection, however, it may be noted that notwithstanding the fact that what she had done was fully explained to her by appellant, two of her nephews and others, she never changed or sought to change or alter the disposition made in the will although importuned so to do. On the other side the evidence is to the effect that the will was made of her own volition; that she consulted a lawyer several times before the will was executed who gave it as his opinion that she understood and knew what she was doing; that she was examined by a psychiatrist before the will was executed who expressed the same opinion; that a surgeon and an attending physician who examined and treated her around this date gave similar opinions as to her mental condition and her capacity for knowing people and understanding what she was doing; that the appellees and

other witnesses closely associated with her testified with regard to what she said with reference to her property, her relatives and the appellees before the execution of the will. This evidence was indicative of an understanding of her act, her testamentary disposition and her wishes in relation thereto. There is no evidence whatever of an unbalanced mind or mentality.

In the light of this evidence and the attitude which we must take in its examination we are unable to say that the finding of the trial court on the facts is clearly wrong.

Finding no error in the determination of the issues presented the judgment of the district court is affirmed.

AFFIRMED.