MARY A. ROSENCRANS, APPELLEE, V. MODERN WOODMEN OF AMERICA, APPELLANT.

FILED JANUARY 2, 1915.    No. 17,846.

1. **Death: PRESUMPTION.** Where absence of the person insured is shown to have continued for seven years or more, unaccompanied by circumstances which reasonably account therefor on a theory not involving death, it is sufficiently strong to cast the burden of rebutting it on the party who asserts the continuance of life.

2. ———: ———: SUFFICIENCY OF EVIDENCE. The evidence examined, and *held* sufficient to warrant the presumption of death from the absence shown.

APPEAL from the district court for Sarpy county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Benjamin D. Smith* and *Nelson C. Pratt,* for appellant.

*W. W. Slabaugh* and *James T. Begley,* contra.

HAMER, J.

The defendant and appellant, Modern Woodmen of America, is a corporation and a fraternal beneficiary association. On the 8th day of October, 1892, it issued a benefit certificate to Charles H. M. Rosencrans, the husband of the plaintiff. The certificate provided that on the death of said Charles H. M. Rosencrans the defendant would pay to Mary A. Rosencrans, the plaintiff herein, the sum of $2,000. The plaintiff and her husband resided at Papillion, Nebraska. For a considerable time prior to the 9th day of September, 1903, the husband was working as a carpenter for Swift & Company, in South Omaha, and the plaintiff lived with the children at Papillion, Nebraska. Rosencrans boarded with a Mr. and Mrs. Ashburn at South Omaha, and generally went home to Papillion on Saturday nights, returning to South Omaha Monday mornings. It appears that on or about September 9, 1903, Mr. Rosencrans told Mrs. Ashburn that he was going up to the Odd Fellows Hall in Omaha to see a man buried, and that he

expected to be back that evening. The body of the man who was to be buried was shipped away, and so there was no burial. Rosencrans did not return that night, and up to date he has failed to come back. The plaintiff commenced an action in the district court for Sarpy county on the 26th day of December, 1911, against the defendant, Modern Woodmen of America, for the sum of $2,000, with interest, and the costs of the suit. She recovered a judgment on the 22d of June, 1912, against the said defendant for $2,052.10, together with interest from the 10th day of May, 1912, at 7 per cent. per annum, and the costs. From this judgment the defendant appeals.

The evidence shows that Rosencrans had lived 34 years in Nebraska. He and his wife had lived together 23 years. Most of the time they had resided at Papillion. They had a family of four children. Rosencrans was a most industrious man, much devoted to his family, and was a member of at least three fraternities, the Masons, Odd Fellows, and Modern Woodmen. He owned a home in Papillion and also a residence property in Omaha. He was a Dane, and came from Copenhagen, Denmark. He seems to have been affectionate to his wife, and wrote to her every week when he was absent from home. He also wrote to the children, and they wrote to him. The daughter was a school teacher. He and his wife seem to have lived together happily. The fraternal orders assisted in making a search for the lost husband. They got the assistance of the police. They engaged in a wide correspondence. The defendant produced the evidence of a Mr. Beadle, who testified that he had seen Rosencrans in the latter part of October, 1904, at Winnemucca, Nevada. He testified that he went into a restaurant to get supper between 6 and 7 in the evening and saw Rosencrans sitting at the table eating supper; that he spoke to him and said to him "I thought you was dead;" that he talked with him about 15 minutes, and was told by him that he was working for the Southern Pacific Railroad Company.

Mrs. Rosencrans procured her counsel, Mr. Holmes, to investigate concerning whether her husband had been at

Winnemucca. It appears that the lawyer wrote to the foreman of the shops at Winnemucca, and received a letter from him. The foreman examined a photograph of Mr. Rosencrans, and said that "he knew of no such man ever having worked there." On objection being made by the defendant, this evidence was stricken out.

It is contended by the defendant that, as there is evidence to show that the husband of the plaintiff was seen after he left Nebraska, therefore the presumption that he is dead by reason of the expiration of seven years is removed. It is contended that there must be a lack of information concerning the absentee on the part of those likely to hear from him after diligent inquiry; that the inquiry should extend to all those places where information is likely to be obtained and to all those persons who, in the ordinary course of events, would be likely to receive tidings if the party were alive, whether members of his family or not, and that in general the inquiry should exhaust all sources of information which the circumstances of the case suggest.

The insured seems to have been attached to his family, and it was strange that he should leave his wife and children as he appears to have done. We should not lose sight of the fact, however, that his wife forbade him to visit Mrs. Graham, the woman who had slandered her and her daughter. This fact may not throw much light on the subject, but Mr. Rosencrans may have been very impatient of his wife's interference touching the question of whether he was at liberty to visit Mrs. Graham. It is not shown that they quarreled about this matter, but it is shown that the relations between the plaintiff and Mrs. Graham were, to say the least, unfriendly, and that the plaintiff denied to her husband permission to call upon Mrs. Graham. That fact appears to show the only jar in their lives. That alone may have been reason enough why the assured would leave his wife and his family, and, once having left them, he would be subject to other influences which might prevent him from returning. The facts do not appear to stand in the way of the plaintiff's right of recovery. No one may

know whether the assured is really dead or alive. He has been gone since that particular day when he dropped out of sight. It was for the jury to say whether they believed the testimony of the witness Beadle. If they did not believe his evidence (and they may have felt bound to question it) there was nothing to prevent the application of the usual rule which would enable the jury to consider the presumption of the assured's death a fact after the expiration of seven years. It is more than eleven years since the assured went away. There is nothing strange that he should die at his time of life.

The case of *Modern Woodmen of America v. Gerdom,* 72 Kan. 391, is criticized in *Miller v. Sovereign Camp, W. O. W.,* 140 Wis. 505, where the court refused to follow it. The court say: "Proof of diligent search and inquiry is not required to establish the presumption of death of a person who has been absent from his home or place of residence for seven years." On the question of residence the court further say: "The general rule is that a man must have a habitation somewhere and that he can have but one, and that in order to lose one he must acquire another." The court refers to the *Gerdom* case, which is cited by the defendant, and refuses to follow it, and quotes from 1 Greenleaf, Evidence (16th ed.) sec. 41, as follows: "After the lapse of seven years without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party. * * * It is sufficient, if it appears that he has been absent for seven years from the particular state of his residence, without having been heard from."

In the *Gerdom* case the assured was last seen at other places than his home, the residence of his mother, and there were also rumors as to his whereabouts. In that case there was no proof that the son had acquired a new residence, and the court was held to have rightly presumed that his residence was with his mother. In the *Gerdom* case the father and mother were beneficiaries on a certificate issued to the son. The son left his parent's home in Topeka, Kansas, on August 15, 1895, for California. In

December of that year he wrote to them. In August, 1896, they learned from his employer that he was last seen in May of that year. The court say: "In this case Joseph Gerdom (the father) was the only witness produced to prove want of intelligence from the absentee at his former place of residence, and he spoke for himself alone. * * * The young man's mother and his brothers and sister 'were not called." The son may have continued to correspond with his sister for years after leaving Oakland, and may even be in correspondence with her now. His last word to his family was that he intended to stay in California for some time at least, and it was the duty of the plaintiffs to secure information there. *Whiteley v. Equitable Life Assurance Society,* 72 Wis. 170. In *in re Estate of Harrington,* 140 Cal. 244, the court hold that a wife is not bound to make inquiry as to the whereabouts of her husband, who has been absent for ten years without advising her concerning his movements. It is the duty of the husband to inform his wife of his whereabouts.

In *Magness v. Modern Woodmen of America,* 123 N. W. 169 (146 Ia. 1), the court said: "The presumption of death from absence is not conclusive; but, when absence is shown to have continued for seven years or more unaccompanied by circumstances reasonably accounting therefor on a theory not involving death, it becomes sufficiently strong to cast the burden of rebutting it on the party asserting continuance of life." In that case Magness disappeared from Iowa City June 13, 1899. In September his wife received a letter, purporting to be written by him in South Dakota, saying that he would return in October. Afterwards he wrote her, saying that he was going to Minneapolis, and requesting her to write him at that city. She did so, but the letters were undelivered. Nothing in his previous history indicated a purpose to repudiate his duty to his family. The court said: "No greater wrong could be done to the character of the man than to account for his absence even after the lapse of a few short months upon the ground of a wanton abandonment of his family and friends." In that case the lower court found

for the plaintiff, and the appellate court affirmed the judgment. It was said in the opinion: "There was no direct evidence of Magness' death; but the fact was sought to be established by circumstances, the chief of which was the disappearance of said insured person from his home and from the knowledge of his family and friends for a period of more than seven years."

In *Holdrege v. Livingston,* 79 Neb. 238, this court said: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." In that case it was further said: "Where a party leaves his domicile with the avowed intention of establishing some specific new abode, the inquiry must follow him to such new domicile, but * * * there is a total lack of any evidence that Elijah Noyes * * * did in fact establish any new residence or place of abode."

It is contended by the defendant that the court erred in giving instruction No. 3. In that instruction the jury were told, in substance, that the presumption of life continues for seven years, under ordinary circumstances, after the unexplained disappearance of a man from whom no tidings return to his friends or acquaintances, and that then the presumption of death arises; that this presumption may be overthrown by evidence of facts and circumstances surrounding such disappearance which tend to affect the inference of continued life or early death, and in arriving at their conclusion the jury should consider the facts and circumstances and possible motives of the missing man to absent and conceal himself, as also his attachment to the members of his family and his friends, and his prospects in business, his character and habits, and the extent of the search made for him. It was then said: "Accordingly, if you find by a preponderance of the evidence that the insured, Charles H. M. Rosencrans, left his home and has been continuously absent therefrom for a

period of seven years prior to the 26th day of December, 1911, without any intelligence of his whereabouts being received from or concerning him during that time by his family or friends who, were he living, would naturally hear from him, then such continued absence, together with such lack of intelligence concerning him, would, if unexplained, raise the presumption of his death, and in that event, if the presumption has not been overthrown by evidence in the case, your verdict should be for the plaintiff."

We are unable to see any prejudicial error in the foregoing instruction. Mrs. Rosencrans and the various organizations of which her husband was a member seem to have more or less diligently searched for him. The testimony of the witness Beadle, who claims to have seen Rosencrans at Winnemucca, was not very satisfactory. The jury may well have questioned it. The interview with the husband at Winnemucca seems to have been exceedingly brief. In any event, the attorney who represented the plaintiff made inquiry about the matter, and the plaintiff saw the letter which he received from Winnemucca. But whether this interview did or did not occur, and whether the insured was ever at Winnemucca or was never there, is perhaps immaterial under the law as we conceive it to be.

In *Holdrege v. Livingston,* 79 Neb. 238 this court said: "The rule is settled that the presumption of life with respect to persons of whom no account can be given ends at the expiration of seven years from the time they were last known to be living, after which the burden of proof is devolved on the party asserting the life of the individual in question. 2 Greenleaf, Evidence (16th ed.) sec. 278f."

The insured seems to have been a man of excellent habits and of a domestic turn of mind. There are many reasons to suppose that he would return to his family if he were living and able to do so. Under the rule established in this state and in some other jurisdictions, the insured is presumed to be dead after the expiration of seven years from the time he was last known to be living. In this case more than ten years have elapsed since that time. We

find abundant evidence in the record to sustain the judgment of the lower court.

The judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.