GERTRUDE L. CRANE, APPELLEE, V. GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN, APPELLANT.

FILED JUNE 6, 1921. No. 21631.

1. **Death:** PRESUMPTION. Seven years of continued and unexplained absence from one's home or place of residence is sufficient to give rise to a presumption of the death of the absentee, where nothing has been heard from or concerning him during that time by those who would naturally have heard from him, had he been living.

2. **Appeal:** AFFIRMANCE. The action of the trial court in discharging the jury and entering judgment for the plaintiff will not be disturbed if the evidence is such that reasonable minds could not have disagreed upon findings of fact leading to such judgment.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Edward J. Lambe* and *Edward F. Leary,* for appellant.

*Jefferis, Tunison & Wilson, contra.*

Heard before LETTON, DAY and DEAN, JJ., SHEPHERD and STEWART, District Judges.

SHEPHERD, District Judge.

In this case the plaintiff sues on an Ancient Order of United Workmen benefit certificate issued to her brother and naming her as beneficiary. She says that he had not been heard from for more than seven years, alleges that he is dead, declares that his insurance has been kept in force, and prays for a judgment compelling payment. The defendant denies. The trial court discharged the jury

and entered a judgment in plaintiff's favor. Complaining of this judgment, the defendant appeals. Practically only one point is contested, the sufficiency of the evidence to establish the death of the insured.

The insured, Allen E. Goble, was an unmarried man. After years of steady employment in Omaha, he visited the plaintiff at her home in Joplin, and passed through a lengthy period of ill health there, including an attack of typhoid fever. Convalescing, he went to Kansas City to find something to do, and there almost immediately disappeared. This was in about 1910. It is fairly certain that he worked for the Loose-Wiles people a day or two, or for a short time, but after that he seems to have dropped out of sight, so far as any subsequent knowledge of him or of his whereabouts is concerned.

Shortly following his departure for the point named, the plaintiff moved out to the coast and lived for several years at different places in California and Oregon. And, on account of her much moving, it is argued by the defendant that she hardly could have expected to hear from her absent brother, and that, under the circumstances, the passage of years ought not to operate as proof of his demise. Counsel also point out, with some basis in the evidence, that the insured was uncommunicative, unsociable, reserved, and not inclined to value the society of plaintiff's husband. Counsel contend that he was not the kind of man to keep in touch with his relatives or to write to his friends. They assert as probable that he parted with his family and with his friends to seek new fields and new associates.

But, while his father describes him as peculiar, neglectful of his duty to write, and "one of those boys that draws himself into his shell," it is clear from the evidence that he cherished a real affection for his sister, the plaintiff. His father says that he and his sister were very affectionate. The two were the only children of their parents, and were much together in early manhood and womanhood, as well as in childhood. For a number of years,

and until the plaintiff and her husband left Omaha, he was a member of her household. It is significant, as the undisputed evidence shows, that after she had left Omaha the insured wrote her every two or three weeks practically up to the time of his disappearance. Significant, too, is the fact that when he left Omaha, out of a job and out of health, he went to her at Joplin. It is fair to conclude that he would have acquainted her with his whereabouts within the first seven years of his absence, had he lived. It is true that she was moving and changing her residence a good deal; but, as he was well informed, their father continued to reside at Joplin (he was living there when the insured went to Kansas City), and a letter to her in his care would have been certain to reach her.

It, moreover, appears that the plaintiff made a considerable effort to find him, had him looked for by attorneys and detectives, addressed letters to him at different places where he was known to have friends and acquaintances, and at various places where he might be thought to have gone, advertised for him, notified the defendant company of his disappearance, sought him among relations; and all without avail.

In view of the foregoing, we are constrained to believe that the insured died during the seven years following his disappearance in Kansas City. The case is ruled by the already considerable number of similar Nebraska cases in consonance with the great weight of authority throughout the states. *Coe v. National Council of K. & L. of S.,* 96 Neb. 130; *McLaughlin v. Sovereign Camp, W. O. W.,* 97 Neb. 71; *Rosencrans v. Modern Woodmen of America,* 97 Neb. 568.

The law of these cases, and of a number of others discussed in their opinions, is that seven years of continued unexplained absence from one's home or place of residence is sufficient to give rise to a presumption of the death of the absentee, where nothing has been heard from or concerning him during that time by those who would naturally have heard from him, had he been living. It is

obvious from an examination of the record that this doc-trine is applicable to the case at bar, and consequently that the ruling of the lower court should be approved.

Objection is made that the question should have been submitted to the jury for its determination. In any event the decision must, we think, have been the same. The jury could not reasonably have found to the contrary.

The judgment is, accordingly,

AFFIRMED.