JESSIE M. TALBOT, petitioner.

Bristol.   November 24, 1924. — January 9, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

</div>

*Death. Evidence*, Presumptions and burden of proof, Of death. *Executor and Administrator.*

Upon a petition for the appointment of an administrator of the estate of one who had been absent from his home for more than seven years without being heard of, a judge of a probate court was not required as matter of law to find that the alleged decedent had died when the facts and circumstances surrounding his disappearance from home indicated that he would not be likely to communicate with his family and former associates and accounted for his absence without being heard of; and in such circumstances a finding that the allegation of death set out in the petition was not proved, and a dismissal of the petition, were warranted.

PETITION, filed in the Probate Court for the county of Bristol on April 18, 1924, by Jessie M. Talbot, alleging that she was the wife of Walter H. Talbot, late of Norton, who died "on or before" January 15, 1924, "and after" December 4, 1915, and praying that she be appointed administratrix of his estate.

In the Probate Court, the petition was heard by *Hitch*, J., who, with the recital described in the opinion, dismissed the petition.   The petitioner appealed.

The case was submitted on a brief by the petitioner.

*J. A. Brackett*, for the petitioner.

SANDERSON, J.   This is an appeal from a decree of the Probate Court for the county of Bristol, dismissing a petition

of Jessie M. Talbot, dated March 25, 1924, for the appointment of herself as administratrix of the estate of Walter H. Talbot, alleged in the petition to have died on or before January 15, 1924, and after the fourth day of December, 1915.

Walter H. Talbot was born in 1874, married the petitioner in 1896, and until December 4, 1915, lived in Norton, Massachusetts, with his wife and one son, born in 1899. He had been engaged with others in the wool scouring business in which he had an interest. His relations with his wife had not always been harmonious but there had been no open breach. He was accustomed to leave his home on business without telling her. He was fond of his son and of his aged father, who was seriously sick when Walter H. Talbot left home, and who died about one year thereafter. He had worked hard in his business, was sometimes discouraged and felt that his business associates did not treat him right and that his brother did not appreciate him. He was not in financial difficulties in connection with his business.

For a number of years he had been calling on a married woman in Cambridge, and she had visited his house and was on good terms with his wife. He appeared to be infatuated with her for a long time, particularly the last month before he disappeared. She left her home without the knowledge of her husband on the same morning that Walter H. Talbot left and has not been heard from since. She took no money or personal belongings with her.

Walter H. Talbot went away from his home in an automobile on December 4, 1915, and four days later sent his wife checks by which she could get the automobile and his fur coat which were in a garage in Boston. The letter containing these checks bore the postmark Terminal Station, New York.

Mrs. Talbot and son have continued to live in Norton and neither they nor any one else, so far as they know, have heard from Talbot since she received the letter containing the checks. A witness, engaged in the wool business and who was in a position in which he would be likely to hear of most persons prominently engaged in the wool business at home or abroad, had not heard from Talbot since December, 1915.

After Talbot disappeared Mrs. Talbot found three letters in his desk, one addressed to her, one to her son, and one to both. The letter to the son stated in substance that it was a terrible thing for him (the father) to go away and leave his son; that he had been miserable at home, could not live " this way any longer "; that some day he hoped to have his son with him and he would come to him some day; that he (the son) was the one reason why it was hard to go. These three letters relate mostly to money which the mill owed Talbot and to other property he was giving to his son and wife, and contain instructions about it; one of them expressed the wish that he had more to leave them. In his letter to both he stated that he was not giving them much ready cash because he wanted some " to start anew with," that he was doing the best he could for them and thought they would realize that they were " getting the bulk." With these letters was a power of attorney to the wife giving her authority to cash checks, transfer bonds, stocks and other securities, receive the proceeds thereof, and to raise money by loans on his insurance policies.

The decree states in substance that it did not appear to the satisfaction of the court that Walter H. Talbot was deceased. The question presented by the appeal is whether the decree dismissing the petition for administration should be reversed. The appellant contends that as matter of law upon the facts found Walter H. Talbot is presumed to be dead and a decree should have been entered granting administration.

The rule in regard to the presumption of death was stated by Chief Justice Shaw in *Loring* v. *Steineman,* 1 Met. 204, 211, in the following language: " It is a well settled rule of law, that upon a person's leaving his usual home and place of residence for temporary purposes of business or pleasure, and not being heard of, or known to be living, for the term of seven years, the presumption of life then ceases, and that of his death arises . . . . But this presumption may be rebutted by counter evidence . . . or by a conflicting presumption."

In *Marden* v. *Boston,* 155 Mass. 359, evidence was offered

tending to show that a United States pensioner left the place where his wife and children lived in 1867, and that they, as well as those in authority at the pension department, made efforts to learn his whereabouts, but never heard from him after he left. The court said at page 360: " These facts, with nothing to control the inferences naturally to be drawn from them, point to his death [before January 1, 1881], and warrant a finding in favor of the plaintiff on this part of the case."

In *George* v. *Clark*, 186 Mass. 426, the court refers to the presumption of death as one that arises from a person's " unexplained absence."

Absence alone, no matter how long continued, is not sufficient to raise the presumption of death. The absence must be from the person's domicil or established residence. *Hitz* v. *Ahlgren*, 170 Ill. 60. *Francis* v. *Francis*, 180 Penn. St. 644. In the case last cited the person left his home in Pennsylvania and settled in Patagonia. Under these circumstances there was a change of residence and it was held that the presumption of death did not arise from his absence from his home in Pennsylvania unheard of for seven years. It must appear that the person who had gone away had not been heard from by those who would be likely to hear from him if he were alive. *Davie* v. *Briggs*, 97 U. S. 628. *Wentworth* v. *Wentworth*, 71 Maine, 72. If the facts disclosed and the circumstances surrounding a person's departure from home indicate that he would not be likely to communicate with his family and former associates and are such as to account for his absence unheard of, the presumption of death does not arise. *Matter of Wagener*, 143 App. Div. (N.Y.) 286. Stephen, Digest of Law of Ev. art. 99.

The facts stated would warrant a finding that Walter H. Talbot did not go away for a temporary purpose of business or pleasure, but with the intention of abandoning his family and business and starting anew in some other place. His infatuation for the woman, who disappeared at the same time he went away, would justify the inference that he left under such circumstances that he would not be likely to let his family and former associates hear from him or know where

he was.   Upon the facts found the court might properly
decide that the presumption of death did not arise and that
the petitioner had not proved that Walter H. Talbot was
dead.   The statement in the decree to the effect that it did
not appear "to the satisfaction of the court that said Walter
H. Talbot is deceased," we take to mean no more than that
the allegation in the petition that "Walter H. Talbot . . .
died on or before the 15th day of January 1924, and after the
4th day of December in the year of our Lord one thousand
nine hundred and fifteen" has not been proved.

*Decree affirmed.*