SARAH BATTH, INTERVENER, APPELLEE, V. METROPOLITAN
LIFE INSURANCE COMPANY, APPELLANT.

290 N. W. 902

FILED MARCH 15, 1940. No. 30699.

*Harley G. Moorhead* and *Emmet S. Brumbaugh*, for appellant.

*Abrahams, McGrath & Frenzer* and *Monsky, Grodinsky, Marer & Cohen,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action at law upon four policies of life insurance, in which the assured was William Batth. Batth disappeared from Omaha, Nebraska, where he had previously resided, in 1926. The petition of plaintiff in intervention alleges, in substance, in addition to the due issuance of the policies in suit, and the full payment of premiums thereon,

that on or about the 26th day of September, 1926, William Batth left his home in Omaha, Nebraska; that since said date plaintiff has not heard from him; that diligent search has been made for him without success; that by virtue of his unexplained absence for a period of more than seven years the death of said assured is established. To this petition the defendant company filed its answer, in effect taking issue with the allegations of the petition so far as the alleged unexplained absence of William Batth was concerned. A jury was thereupon waived by the parties, a trial to the court was had, and evidence was adduced by each of the parties in support of the various contentions. On consideration of this proof, there was a finding and judgment entered by the court in favor of plaintiff and against defendant as prayed, and from the judgment of the district court overruling its motion for a new trial, the defendant company appeals.

As to the law of the case, we are quite agreed that, when a jury is waived by the parties, and a law action is tried to the court, its findings of fact have the same effect as the findings of a jury and will not be set aside unless clearly wrong. *Linch v. Berggren*, 135 Neb. 530, 282 N. W. 528; *Bank of Roca v. Meyer*, 135 Neb. 128, 280 N. W. 449; *Hole v. Hamp*, 134 Neb. 259, 278 N. W. 480; *Nelson v. Nelson*, 133 Neb. 458, 275 N. W. 829.

The real issue to be determined in this appeal is the applicability of the principle early adopted by this court in the case of *Holdrege v. Livingston*, 79 Neb. 238, 112 N. W. 341, in the following language: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." See, also, *Fredrikson v. Massachusetts Mutual Life Ins. Co.*, 126 Neb. 240, 252 N. W. 802; *Munson v. New England Mutual Life Ins. Co.*, 126 Neb. 775, 254 N. W. 496; *Wells v. Equitable Life Assurance Society*, 130 Neb. 722, 266 N. W. 597.

It also follows that, in the instant case, the trial being had to the district court without the intervention of a jury, the trial court is presumed to have rejected and disregarded all incompetent and improper proof, and the only question presented by the record is whether its findings and judgment are predicated upon sufficient and pertinent evidence. *Bolin v. Fines*, 60 Neb. 443, 83 N. W. 740.

In this connection, it is to be observed that, in so far as the weight of evidence is dependent upon the credibility of the witnesses from whom it is derived, where conclusions supported thereby are or may be conflicting, the trial court, as to witnesses testifying in its presence, has an undoubted advantage in evaluating the testimony so received.

On the question of whether the record in the instant case adequately supports the presumption of death arising from more than seven years unexplained absence from his home, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him, there can be no doubt but that William Batth left Omaha in the fall of 1926, and, excepting one letter in April, 1927, from Sioux City, Iowa, addressed to a friend in Omaha, wherein he stated that if he could get back his job he wanted to come back (to Omaha), nothing has ever been heard from him up to the time of the trial in the district court in November, 1938, a period of more than eleven years. Prior to his disappearance he had lived in Omaha and Council Bluffs, Iowa, since at least in 1913. On January 13, 1920, he was married to Sarah Batth. To this union two children were born. The family then lived at 2208 North 17th street, and from thence they moved to 2717 Miami street, where they remained about seven years. From the last address the family moved to 2208 North 30th street where, at the time of the trial in the district court, they had resided for seventeen years. Premiums had been paid by Sarah Batth on the policies in suit up to May 29, 1934. The record discloses that in July, 1926, Sarah Batth instituted divorce proceedings against her husband, in which an order for alimony was entered on July 19, 1926. On this

order the Union Pacific Railway Company, by whom William Batth was then employed, was "garnished." However, this matter was compromised by the parties and the garnishment proceedings were dismissed on the 9th day of August, 1926.

Mrs. Batth testified as follows: "Q. When did you last see Mr. Batth? A. It was the 26th day of September, 1926. Q. And where did you see him? A. When he called me and told me to come down, he was going to get the boy some new clothes, overcoat and shoes. Q. And did you go down-town? A. Yes; I did. Q. And where did you meet him? A. I met him about 15th and Douglas. Q. And where did you go? A. We went to a clothing company by the name of Beddeo's. * * * Q. Did he buy some clothes for the boy? A. Yes; he did. Q. Who paid for them. A. Mr. Batth. * * * Q. Now, have you seen him since that date? A. No; I haven't." She never heard from Batth thereafter, nor anything in connection with him, except for a newspaper clipping containing an account of the death of a William Batth at Sioux City, Iowa. The evidence indicates that William Batth had an abiding affection for his children.

John Barker, who first met William Batth in 1913, testifies that they were friendly until insured's disappearance in 1926, which witness explains in this manner, viz.: "Yes; (we were) just the same as brothers; he had no relations here and I didn't; we were taken up together, just like brothers." This witness also testifies that he saw William Batth just before he left Omaha in 1926; that he (Batth) "had got laid off the night that he left here. * * * He told me he had lost his job and he was going to Sioux City to see if he couldn't get work up there; he had been working there before." In April, 1927, witness received a letter from William Batth from Sioux City, and the substance of this letter was, "If he (Batth) could get his job back, he wanted to come back." Further, "A year after Hoover got elected," the witness "come back from the east," and saw a newspaper clipping which reported the death of a William Batth at Sioux City, Iowa.

With the exception of the letter in April, 1927, and the newspaper clipping referred to, William Batth was never thereafter heard from.

The record also discloses that Mrs. Batth secured the making of an extensive search by a Mr. Williams, wholly without results.

True, in opposition to this proof, we have the testimony of a witness introduced by the defendant, as to a conversation claimed to have been had between the witness and William Batth some 30 days prior to Batth's departure in 1926, in which the latter expressed the intention that he was going to quit his employment to keep from paying alimony to his wife, and was going to Oklahoma where he had an uncle living, "and was going to not write or keep relationship with anybody in Omaha, wasn't going to write to any one or let any one in Omaha know where he was." Further, that Batth "quit" his employment and left some thirty days thereafter. Incidentally, the records of Batth's employer, assuming their competency, disclose that William Batth did not "quit" his employment, but that he was "discharged" by his employer.

At most, the evidence of defendant's witness amounts to conflicting proof, the probative force of which is to be largely determined as a question of credibility of witnesses. The trial court, by its findings and judgment, determined this question adversely to the defendant. We find no reason in this record for overthrowing this judgment.

Viewing the evidence as an entirety, in the light of the judgment of the trial court, we find that the case presented is one clearly entitled to the benefit of the presumption of death after more than seven years of unexplained absence. The proof is ample to support the judgment of the district court, which is

AFFIRMED.