WALTER T. BANKS, APPELLEE, V. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.

8 N. W. (2d) 185

FILED FEBRUARY 17, 1943. No. 31463.

824

*Beghtol, Foe & Rankin,* for appellant.

*Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is a suit to recover upon a life insurance contract issued upon the life of Josephine P. Banks, and payable to her father, Walter T. Banks. Josephine P. Banks, an adopted daughter, then about 19 years of age, disappeared in May, 1932, and has not been heard from since that time. Plaintiff sued on the policy in November, 1940, alleging generally that after eight years of unexplained absence he believed the insured was dead. Defendant answered, alleging that the circumstances surrounding the absence of the insured from the home of her foster parents were such as to negative any legal presumption of death, and that they establish that she voluntarily left her foster parents because of a desire to live separate from them, and that she is alive at the present time. The case was tried to a jury, resulting in a verdict for the plaintiff. Defendant appeals. We affirm the judgment of the trial court.

The original plaintiff in this action was Walter T. Banks. He died after the action was tried and appeal lodged in this

court. The action was revived in the name of Beulah Banks. For clarity here we will consider Walter T. Banks as plaintiff.

On April 10, 1916, plaintiff and his wife adopted a baby who was given the name Josephine. The Banks had no other children. Banks was afflicted with tuberculosis, and moved around a bit and for some time was separated from his family, they remaining in Lincoln while he was in a sanitarium in Colorado. About 1924 he secured employment in Denver, and the family went there to live, and Josephine attended public school. In 1930 when she was in high school her grades were below average. She was having some difficulty with her parents. This appears to have been based upon restraints because of work at home and a desire to go out with boy friends in the evening.

In October, 1930, her parents filed a complaint in the juvenile court charging that she was a delinquent child, in that she "is beyond their control, is truant from school, and is unwilling for them to meet her friends." She was found to be a "delinquent" child, placed on probation and ordered to report once a week. Nothing further is shown as to that proceeding. About that time her parents say she was absent from school one day, but they located her and brought her home that night. Friends testify that the parents told them she had run away, and they had secured her return to the home. About that time Josephine told others that she was not happy at home. In January, 1931, while still in school, she told a friend of her parents that she had run away, had been brought back and "when I go again I am going to make a get-away." Her school record shows that she was absent from school nine times the last semester, but she was not listed as "truant." She quit school on January 26, 1931, apparently with her parents' approval. From that time the record shows that she was at home with her parents, assisting them in earning a living and happy in her home life. The father lost his job about that time because of a reduction in force. He thereafter operated a hotel, appears to have failed in that business, and in late spring 1932

answered an advertisement for a family to cook at a mine in the mountains. By that means they became acquainted with one Rollo. In late April or early May, Rollo, another man, Mr. and Mrs. Banks and Josephine went to the mining camp. Some days later Mr. Rollo came to the camp, asked Mrs. Banks and then Josephine to go to his home in Denver and work as a maid for a few days. Josephine left with Mr. Rollo, saying to her mother, "Goodbye, I will see you next Saturday." The day is fixed as May 23, 1932. She remained at the Rollo home until the following Friday, when she left and did not return. She left clothing and a few personal belongings at the Rollo home. She was wearing an old dress at the time. Later that day she was seen on a street car sitting with a "nice young man," and wearing a new dress. She visited with a friend and told her, "I am going home tomorrow." She was at this time about 19 years old, well developed, attractive and in good health.

The Rollos reported her disappearance to the police, and a notice was run in the police department bulletin on June 1. Rollo then went to the mining camp and reported her disappearance to the parents. Shortly thereafter the plaintiff went to Denver, sought Josephine among his and her friends, and the police broadcast for her on the radio. Still later the parents continued the search in Denver. On September 2, 1932, the plaintiff reported her disappearance to the defendant's Denver office, and asked for assistance in searching for her, and received no practical help. About that time plaintiff moved to Lincoln, where Josephine's grandmother and other relatives lived, and where Josephine had been and was acquainted. The evidence is that Josephine was very fond of the grandmother. Plaintiff made a somewhat exhaustive search for his daughter, limited by his means, physical condition and abilities. Among other things he inquired of the dead letter office for mail that might have been sent to the post office near the mine. From the time she disappeared in May, 1932, she has not been seen nor heard from by any of her relatives or friends, and searches have been fruitless.

The court has long followed the rule, last stated in *Batth v. Metropolitan Life Ins. Co.*, 137 Neb. 676, 290 N. W. 902: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." The legislature has recognized the force of this rule in section 30-1901, Comp. St. Supp. 1941, providing: "Any persons who have not been heard from for a period of seven years will be presumed to be dead and the estate of such persons shall be administered in the following manner."

Defendant does not question this rule, but questions its application to the facts here shown.

The defendant's first contention is that the evidence was not sufficient to sustain the verdict. This is based upon the fact that Josephine was an adopted child, had had trouble with her foster parents regarding her boy friends, had indicated a desire to get out from under their control, had said she would do so, and, they argue, did so voluntarily the day before she was to return to her home. Defendant insists that this evidence indicates a desire to escape from the control of her foster parents. This argument loses its potency in the light of the evidence that for the last sixteen months of her life at home the record shows she had no difficulty with her parents, had at least one young man friend with the parents' approval, assisted them in their effort to earn a living and was happy at it.

Here we have a girl, in early womanhood, living happily at home, helping her foster parents. She disappears after having told a friend that she was going home "tomorrow." She left her clothes and personal belongings behind. Had she been going out to face the world alone under the economic conditions existing in 1932 she would, we think, naturally have taken her personal belongings with her. The reason advanced by defendant to explain her absence is based on a childish statement made that the next time she left home she would make a get-away, and that she had been

unhappy. There is nothing in the record indicating that the adolescent attitude toward her parents while she was in high school carried over into the maturing months that followed. The evidence rather clearly establishes that it did not. These events are too remote in time, unconnected as they are with any subsequent events over a period of sixteen months. But assuming that that was her motive, and she left home because of it, that reason does not account for her continued absence. She had had no difficulty with her friends, and there is no reason apparent why she would not communicate with them or her grandmother. Likewise the control of her parents over her would have expired in two years, by her reaching majority. Continued silence or absence after that time would have been unnecessary, and, it seems to us, unnatural.

As a part of its contention regarding the sufficiency of the evidence, defendant argues that the parents made a dilatory and not exhaustive search at the time of Josephine's disappearance. It is easy in retrospect for the trained minds in defendant's employ to suggest that inquiries at the marriage bureau, morgue, etc., should have been made. The parents inquired of the boy friend who had been attentive to her. She had and did not keep a "date" with a young man the night of the day she disappeared. The record is not one that would indicate a marriage at that particular time. Neither does it indicate that the parents at that time considered death as a probability, but rather that they hoped to find her alive. In this connection it should be noted that in *McLaughlin v. Sovereign Camp, W. O. W.,* 97 Neb. 71, 149 N. W. 112, and *Rosencrans v. Modern Woodmen of America,* 97 Neb. 568, 150 N. W. 630, we cited with approval the rule that it "does not require proof of diligent search and inquiry in order to establish the presumption of death when a person has absented himself from his home or place of residence for seven years." Not to be ignored is the evidence that the plaintiff in September, 1932, sought the assistance of defendant, and received neither suggestion nor aid. Under the circumstances the search here is held to have been sufficient.

It is also contended that the plaintiff did not make full disclosures in the declaration of disappearance, executed in June, 1939, seven years after the event. Some of the information was not as exhaustive as that later given at the trial when the plaintiff and his wife had had occasion to refresh their memories. Defendant's investigators took months to check on this case, and it appears did not contact many of plaintiff's personal and business associates, about whom they later testified.

There are inconsistencies, as defendant complains, in the testimony of plaintiff and his wife, going largely to the dates of events in 1932. This is not an unusual situation where parties who have kept no records testify several years after the event. There is, however, no particular dispute as to the ultimate facts.

Defendant requested the court to submit a special interrogatory ending with this question, "Is the absence of Josephine from the home of her foster parents, and the failure of Josephine to communicate with them an unexplained absence?" The trial court refused to submit the special interrogatory. The defendant, conceding that the giving of such an instruction is discretionary, contends the refusal was error, citing *Kelley v. Meyer Fruit Co.*, 98 Neb. 503, 153 N. W. 554, holding that, where it appears that there is but one question of fact upon which there is substantial conflict in the evidence, the court may submit such question of fact to the jury and upon their verdict thereon should render such judgment as the law requires. In its argument defendant states that "The only question was as to why she (Josephine) left home and stayed away. Was her absence explained or not?"

Defendant also submitted a second requested interrogatory ending with this question, "Did Josephine intentionally remain away from the home of her foster parents and fail to communicate with them?" This requested instruction was also refused.

It appears that defendant considered that there were at least two controverted questions in the case when it was tried.

No reason is advanced as to the basis of the contended error and none appears to us.

*Fink v. Prudential Ins. Co.,* 162 Or. 37, 90 Pac. (2d) 762. is relied upon by defendant. The facts may be clearly distinguished. There as to one policy, death had to be proved to have occurred early in the seven-year period. There the insured was shown by the plaintiff to have left home by design. The preponderant facts pointed to desertion and the desire to escape family burdens and not to death, or in other words the absence was explained. There also the beneficiary failed to follow direct clues that might have disclosed the whereabouts of the insured. The case is valuable for a discussion of the law, but we do not consider the factual situation of sufficient parallel to be controlling. It may be pointed out that the Oregon court (page 71) refused to follow the rule as to search and inquiry which this court stated in *McLaughlin v. Sovereign Camp, W. O. W., supra.*

Likewise in *Petition of Talbot,* 250 Mass. 517, 146 N. E. 1, the facts pointed to the intention of Talbot to cut all ties that bound him to family, business and friends, and start anew in another place. His absence was likewise explained. That situation does not exist here.

We have held, "that whether seven years' continued absence from one's usual place of residence will raise the presumption of death must depend largely upon the circumstances and conditions of each particular case." *McLaughlin v. Sovereign Camp, W. O. W., supra.*

It should also be noted that in the case of *Batth v. Metropolitan Life Ins. Co., supra,* evidence was received which indicated, if believed, that the insured voluntarily disappeared with a determination to remain away. The same is true of *Fredrikson v. Massachusetts Mutual Life Ins. Co.,* 126 Neb. 240, 252 N. W. 802. In both of these cases a finding of death, based on the presumption, was affirmed.

We conclude that the evidence is sufficient to sustain the verdict.

The trial court instructed the jury:

"You are further instructed that the presumption of life

continues for seven years, under ordinary circumstances, after the unexplained disappearance of a person from whom no tidings return to friends or acquaintances, and then the presumption of death arises. This presumption, however, may be overthrown by evidence of facts and circumstances surrounding such disappearance which tend to affect the inference of continued life or early death, and in arriving at a verdict in this case you are to consider all of the facts and circumstances in evidence, the possible motives, if any, of the missing person to absent and conceal herself, or the want of such motives, her possible motives for returning to her family, her attachment to the members of her family and her friends, her character, habits, condition, prosperity, and the extent of the unavailing search that has been made for her.

"Accordingly, if you find by a preponderance of the evidence that the insured, Josephine P. Banks, left her home and has been continuously absent therefrom for a period of seven years prior to the 28th day of November, 1940, without any intelligence of her whereabouts being received from or concerning her during that time by her family or friends who, were she living, would naturally hear from her, then such a continued absence together with such lack of intelligence concerning her, would, if unexplained, raise the presumption of her death, and in that event if the presumption has not been overthrown by evidence in the case your verdict should be for the plaintiff."

The defendant contends that the presumption of death is rebuttable, that when the defendant offers some substantial evidence to the contrary that the presumption disappears, that the presumption is not evidence, has no probative value and should not be weighed by the jury, and that the court erred in giving the above instruction.

By a prior instruction the court placed the burden of proof upon the plaintiff to establish the death of Josephine.

It is to be remembered here that the pleadings admit that the premiums were paid on this policy down to the date the action was brought, and the evidence indicates that they

were paid to the date of trial, so that plaintiff was not required to prove death on any particular date, either during the seven-year period or prior to the bringing of the action; that the plaintiff did not bring his action until more than eight years after his daughter's disappearance, and that defendant by its answer affirmatively alleged that the facts show that the daughter "was alive" when the answer was filed. The instruction given in the instant case was found to be not "prejudicial" to the defendant in *Rosencrans v. Modern Woodmen of America*, 97 Neb. 568, 150 N. W. 630.

We have followed the rule that where there is an unexplained disappearance of a person there is a presumption that life continues for the first seven years, after which a presumption of death arises. These presumptions in the first instance work to the advantage of the one asserting life to exist, in the second to the advantage of the one who asserts that death has occurred. *Rosencrans v. Modern Woodmen of America, supra; Fredrikson v. Massachusetts Mutual Life Ins. Co., supra; Munson v. New England Mutual Life Ins. Co.,* 126 Neb. 775, 254 N. W. 496; *Wells v. Equitable Life Assurance Society,* 130 Neb. 722, 266 N. W. 597; *Batth v. Metropolitan Life Ins. Co., supra.*

These presumptions of life or death are in the nature of conclusions of ultimate fact which the law makes when a jury find that certain elemental facts exist. They are rebuttable. The burden of overcoming the presumption rests upon the one asserting a contrary conclusion to be true. To fail to instruct the jury of these presumptions would be to deny to the litigant the benefit of the conclusion to which he is entitled. The trial court did not err in the instruction given.

The next question involves the allowance of an attorney's fee. Our statute is as follows: "In all cases where the beneficiary, or other person entitled thereto, brings an action at law upon any policy of life, accident, liability, sickness, guaranty, fidelity or other insurance of a similar nature, or upon any certificate issued by a fraternal beneficiary association, against any company, person or associa-

tion doing business in this state, the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs, and if such cause is appealed the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings." Comp. St. 1929, sec. 44-346.

Plaintiff in his petition prayed for judgment "and costs of suit, including a reasonable attorney's fee to be fixed by the court and taxed as costs." Defendant made no mention of attorney's fees in its answer. No reference to the matter was made during the trial of the case. After the verdict of the jury was rendered plaintiff filed a motion for the allowance of an attorney's fee. To this defendant objected for the reason that the contract of insurance was governed by the laws of Colorado, and that there is no law in that state providing for the payment of attorney's fee, and the Nebraska statute does not apply. At the hearing on the motion for an attorney's fee, it was stipulated that the application for the policy was made in Denver, the policy delivered in Denver, and that plaintiff was living in Denver at the time, and that Josephine disappeared in Denver. To support its objection defendant offered and the court received, over objection of the plaintiff, the affidavit of its attorney that he had made due search and was unable to find any law of the state of Colorado permitting the allowance of an attorney's fee in an action of this kind. This affidavit was included in the bill of exceptions. The court allowed an attorney's fee and ordered the same taxed as costs.

Defendant, relying upon *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, contends that the allowance of an attorney's fee was error. The situation here does not permit of the application of the rule in the *Aetna* case.

In the absence of proof to the contrary, the laws of another state are presumed to be the same as the laws of

Nebraska. This rule applies both to statutes and law established by judicial decision. *Stark v. Olsen,* 44 Neb. 646, 63 N. W. 37; *Franks v. Horrigan,* 120 Neb. 1, 231 N. W. 27; *National Fidelity Life Ins. Co. v. Gordon,* 130 Neb. 130, 264 N. W. 155.

Plaintiff is entitled to the benefit of this presumption, unless the defendant has met it by proof to the contrary.

Defendant offered only the affidavit of its attorney to support its objection. Section 20-1291, Comp. St. 1929, provides a method for the proof of the statutes of a foreign state and section 20-1293, Comp. St. 1929, provides a method for the proof of the "unwritten law" of a foreign state, by "parol evidence" or the "reports" of adjudicated cases. Neither method was followed by the defendant in this proceeding.

Section 20-1244, Comp. St. 1929, provides that an affidavit "may be used * * * upon a motion." This provision clearly relates to preliminary, collateral and interlocutory matters. The general rule is that affidavits are not admissible to establish facts material to the issue. 2 C. J. 373; 2 C. J. S. 984, sec. 28; 1 Am. Jur. 955, sec. 30. The terms and interpretations of the laws of a foreign state are questions of fact. *United Bank & Trust Co. v. McCullough,* 115 Neb. 327, 212 N. W. 762. Assuming, but not deciding, that the motion for an attorney's fee and the objection presented the issue of the Colorado law, it must follow that upon that controverted issue the defendant failed to offer competent proof of the fact of the Colorado law, and the presumption that the law of Colorado is the same as that of Nebraska permitted plaintiff to recover an attorney's fee in the court below. Plaintiff is likewise entitled to an attorney's fee in this court, which is hereby allowed in the sum of $150 to be taxed as costs.

The judgment of the district court is affirmed.

AFFIRMED.

Rose and Eberly, JJ., not participating.